## APPEAL OF UNION CREDIT REPORTING CO.

Docket No. 6668.     Promulgated March 26, 1927.

1. Assets acquired by a corporation prior to March 3, 1917, in exchange for its capital stock are, under the Revenue Acts of 1918 and 1921, to be included in invested capital at their value on the date of acquisition. In the absence of any such evidence the action of the Commissioner is accepted.

2. Where, subsequent to March 3, 1917, property was transferred to a corporation by an association in exchange for more than 50 per

centum of the voting stock of the corporation and control of the corporation passed to the transferor, *held*, that the transferor retained an interest and control in such property of more than 50 per centum, and that, under section 331 of the Revenue Acts of 1918 and 1921, the property can be included in invested capital only in the amount of its cost to the transferor. There being no evidence thereof, the action of the Commissioner is followed.

*H. L. D. Stanford, Esq.*, and *A. L. Miles, C. P. A.*, for the petitioner.

*Ellis W. Manning, Esq.*, for the Commissioner.

The taxpayer appeals from the determination by the Commissioner of deficiencies in income and profits taxes of $1,247.53, $504.10, and $769.80 for the years 1919, 1920, and 1921, respectively. It alleges as error the refusal of the Commissioner "to allow as invested capital the full value of certain card index files, furniture and fixtures, etc., which were received by the corporation in exchange for stock." The issues raised by the pleadings are the value of the property received for stock and whether the so-called "card index files" are tangible or intangible property.

### FINDINGS OF FACT.

The taxpayer is a Maryland corporation with its principal office at Baltimore. It was incorporated in December, 1916. At a meeting of the board of directors held December 30, 1916, there was presented to the meeting a proposition reading as follows:

BALTIMORE, MD., *December 30th, 1916.*

To The UNION CREDIT COMPANY
　　　(of Maryland)
　　　　　*Baltimore, Md.*

DEAR SIRS:

I hereby offer to sell, assign and deliver to your Company as of January 2nd, 1917, the goodwill of the mercantile agency reporting and collection business of the Union Credit Company (of Delaware) as now conducted by said Company, and as acquired by me from said Company, including all cash in bank, any and all written or printed information, statistics, facts and circumstances now of record in its office relating to or affecting the business, capital, debt, solvency, credit, character, reputation, responsibility, commercial condition and standing of any and all individuals, firms, associations and corporations engaged in or connected with any business, occupation, industry or employment; all its collection business for the recovery, enforcement and collection of accounts, bills, debts, and claims of all kinds; all filing cabinets, desks, chairs, tables, typewriters and all other office equipment, properties, rights, privileges, matters and things now used by it or which it may be entitled to use, in the conduct of its business; all outstanding indebtedness due it and contracts for reports and use of its collection system, which contracts you are to assume and fulfill in accordance with the terms thereof, and further you are to assume all outstanding indebtedness and liabilities of said Union Credit Company; all in consideration

of the sum of $52,250, and in payment therefore I hereby agree to accept 400 shares of the full-paid and non-assessable common stock of your Company of the par value of $50. each and 645 shares of the full-paid and non-assessable six per cent. cumulative, preferred stock of your Company of the par value of $50. each.

(Signed)          LOUIS E. GOODMAN.

This proposition was accepted and the officers were directed to issue capital stock accordingly.

The Union Credit Co. of Delaware, the predecessor corporation, had been engaged in business as a credit agency gathering information with reference to the business, integrity, credit, and standing of individuals and corporations, their past history, their present condition, and any other available information having reference to their financial responsibility or integrity and furnishing same to its subscribers by way of reports. This business was continued by the taxpayer.

In May, 1918, the name of the taxpayer was changed to " Union Credit Reporting Company." At that time there was outstanding $35,000 par value of the 6 per cent cumulative preferred stock and $20,000 par value of the common stock, which was all of the authorized capital stock of the corporation. At the same time that the name was changed the common stock was increased from $20,000 par value to $41,000 par value.

Under date of May 6, 1918, the Retail Merchants Bureau of Baltimore submitted to the taxpayer the following proposition:

The Retail Merchants Bureau, of the Merchants & Manufacturers Association, hereby subscribes for $21,000. par value of common stock of your Company, and in payment for said stock offers to turn over and transfer to your Company the following assets of the Retail Merchants Bureau, to wit:—

(Here follows a list of furniture consisting of desks, tables and chairs, filing cabinets, trays, baskets, typewriters, and other items.)

Accumulated Information:

> Reports on 4,225 individuals, representing the results of special investigations on these parties.

> Reports on paying habits of 150,000 individuals, representing 450,000 accounts.

All the foregoing assets to be turned over and transferred subject, however, to the assumption by your Company of an indebtedness of $7500.00, payable in five installments, without interest, of $1500.00 each, the first installment payable May 1st, 1920, and annually thereafter, but, however, to be payable only out of the profits, and after the dividends on the preferred stock shall have been paid.

The taxpayer accepted such proposition and issued $21,000 par value of its common stock for such assets.

The Retail Merchants Bureau was maintained under the auspices of the Merchants & Manufacturers Association of Baltimore, an organization of the merchants of that city in the nature of a chamber of

commerce.   Under the supervision of the Retail Merchants Bureau, the retail merchants of the city had established an organization for collecting and disseminating among its members information with reference to credit risks.   The credit organization was first begun in July, 1917, and six months was spent in collecting information from the various retail houses with respect to the accounts carried by them with customers.   Such information included a report from each of such houses of the amount of credit extended to each customer, the paying habits of the customer, the date when last credit was extended, the date when the last payment was made and the amount of the balance due.   All of this information was collected upon cards containing the name of the customer.   In January, 1918, the credit organization of the Retail Merchants Bureau first started to furnish such accumulated information to the members of the Bureau.   The information was brought up to date as reports were called for by merchants.   When requested the Bureau caused investigations to be made and furnished reports upon the history, family, and business connections and prospects of individuals or corporations applying to the members of the Bureau for credit.   Copies of such reports were kept for future reference in connection with any other request for a report upon such person.   At the time that these records of the Retail Merchants Bureau were transferred to the taxpayer for its capital stock, the Bureau had in its files credit information with reference to 150,000 individuals and corporations, and complete reports on 4,225 individuals, representing the result of special investigations.   The furniture and fixtures transferred by the Retail Merchants Bureau to the taxpayer for stock in May, 1918, had cost $1,000.

In May, 1918, immediately prior to the transfer to it of the assets of the credit organization of the Retail Merchants Bureau, the taxpayer had in its files reports containing credit information upon 250,000 individuals and corporations.

The certificate of incorporation of the taxpayer provides:

The preferred stock shall be without voting power, except as hereinafter provided, but if the corporation shall fail to declare and pay any semi-annual dividend thereon and such failure shall continue for a period of three months from the date at which said semi-annual dividend would have been payable hereunder, then the holders of the preferred stock shall thereafter have the right to vote such stock and at any meeting of the corporation in like manner and with the same effect as the common stock is voted.

At the time that $21,000 par value of the common stock of the taxpayer was issued to the Retail Merchants Bureau for assets, as aforesaid, the preferred stock was not in arrears in the payment of dividends.

The Commissioner computed the profits tax liability of the taxpayer for the years in question under section 302 of the Revenue Acts of 1918 and 1921.

OPINION.

PHILLIPS: The taxpayer seeks to establish the value, for invested capital purposes, of certain files, furniture and fixtures acquired by it in exchange for its capital stock. A part of the stock was issued for assets in 1916 and another part in 1918.

We have no evidence of the amount or value of the assets transferred to the petitioner on December 30, 1916, by Goodman. The evidence in this respect relates to the value of the assets owned by the petitioner in May, 1918, at the time it acquired the credit records of the Retail Merchants Bureau.

Nor is the record more complete with respect to the assets acquired in 1918. Under section 331 of the Revenue Act of 1918 and the same section of the Revenue Act of 1921, the assets acquired by the petitioner from the Retail Merchants Bureau in May, 1918, can be included in invested capital only in the amount of the cost of such assets to the Bureau. All of the evidence relates to value and we have none concerning cost. Section 331 is as follows:

In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received: *Provided,* That if such previous owner was not a corporation, then the value of any asset so transferred or received shall be taken at its cost of acquisition (at the date when acquired by such previous owner) with proper allowance for depreciation, impairment, betterment or development, but no addition to the original cost shall be made for any charge or expenditure deducted as expense or otherwise on or after March 1, 1913, in computing the net income of such previous owner for purposes of taxation.

Prior to the acquisition of the credit-reporting business of the Retail Merchants Bureau, the petitioner had outstanding $20,000 par value of its common stock, the only stock having voting rights. In exchange for the assets transferred $21,000 par value in common stock was issued to the Retail Merchants Bureau. It is clear from the record, and especially from the minute book of the petitioner, that the object accomplished was to place the control of the petitioner in the Retail Merchants Bureau. By the ownership of a majority of the voting stock of the petitioner, the Bureau retained an interest and control in such property of more than 50 per centum, and the situation presented falls squarely within the wording and intent of section 331 of the Revenue Acts.

*Decision will be entered for the Commissioner.*